IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROBERT J. BOUMSTEIN,<br><br>               Plaintiff,<br><br>    vs.<br><br>SECURITY PRODUCTS COMPANY, LLC, A Minnesota limited liability company;<br><br>               Defendant. | 8:12CV00231<br><br>**FINDINGS, RECOMMENDATION, AND ORDER** |

This matter is before the court on Defendant Security Products Co., L.L.C.'s ("Security Products") Motion to Compel Arbitration and Stay Action, or, in the Alternative, to Transfer to the United States District Court for the District of Minnesota (filing no. 11). For the reasons set forth below, Defendant's motion to compel arbitration and stay this action should be granted.

BACKGROUND

This dispute arises from a Promissory Note ("the Note") and the Asset Purchase Agreement ("the Purchase Agreement")[1] associated with the Note. Defendant Security Products entered the Purchase Agreement to buy certain assets of Hamilton Safe of Nebraska, Inc. ("Hamilton Safe"). Aron Boumstein was listed as the President of

---

[1] The plaintiff objects to the admissibility of the Purchase Agreement, filed as an exhibit to Defendant's brief in support of its motion to compel arbitration, (filing no. 13-1 to -9) claiming it is "not properly authenticated as a true and complete copy of the original . . . because the Exhibits referenced in the [Purchase Agreement] are not attached." Filing No. 10, CM/ECF p. 3. Defendant's counsel provided an Index of Evidence which states the Purchase Agreement, with the submitted attachments is a "true and correct" copy of the Purchase Agreement. Filing No. 13, ¶ 1(A). Moreover, it is not clear what Defendant's counsel means by "not attached." Pursuant to court rules, the exhibits were filed electronically in pdf format on CM/ECF. Each exhibit was assigned a separate docket number in CM/ECF— undoubtedly due to size restrictions and as an effort to make reviewing the documents more convenient for the parties and the court. However, the simple act of breaking up the document into a more useable format does not mean the exhibits were "not attached" to the Purchase Agreement. Accordingly, Plaintiff's evidentiary objection is overruled.

Hamilton Safe. Allegedly Plaintiff Robert Boumstein is, or was at the time of executing the Purchase Agreement, a 10% owner of Hamilton Safe. Filing No. 19-1, ¶ 8, CM/ECF p. 2.

The Purchase Agreement.

The Purchase Agreement was executed on December 3, 2010, by the Chief Financial Officer of Security Products and by Aron Boumstein in his individual capacity and as the president of Hamilton Safe. Plaintiff Robert Boumstein signed the Purchase Agreement "[f]or the purposes of Sections 3, 7, 8, and 9 only." Filing No. 13-1, CM/ECF p. 19.

Under the Purchase Agreement, a portion of the purchase price was to be paid by Security Products in cash at the closing, with the remaining balance financed through the Note.

> Delivery of Promissory Note: Right of Set-Off. At Closing, [Security Products] will deliver the Note to [Hamilton Safe], in substantially the form of Exhibit C attached hereto. The payments due under the Note shall be subject to Buyer's right of offset pursuant to Sections 3, 8, and 9 below, and as otherwise provided herein.

Filing No. 13-1, § 2(b), CM/ECF p. 3.

The Purchase Agreement contains other provisions that directly reference the Note, along with various potential adjustments or offsets to which payments under the Note may be subject. See Filing No. 13-1, §§ 3(b), & 8(c), CM/ECF pp. 4 & 7-8; see also Amendment Number One to Asset Purchase Agreement, Filing No. 13-1, §§ 2, 5 & 6, CM/ECF pp. 21-3. The Purchase Agreement also states:

2

> Entire Agreement: Modifications; Time of the Essence. This Agreement, including any Schedules and Exhibits attached hereto, constitutes the entire and final agreement of the parties with respect to the subject matter described in the Agreement and supersedes all previous negotiations, commitments, understandings or writings with respect to such subject matter . . . .

Filing No. 13-1, § 20, CM/ECF p. 17.

Finally, with respect to arbitration, the Purchase Agreement provides:

> Arbitration: Any dispute arising out of or relating to this Agreement or the alleged breach or it, or the making of this Agreement, including claims or fraud in the inducement, shall be discussed between the disputing parties in a good faith effort to arrive at a mutual settlement of any such controversy. If, notwithstanding, such dispute cannot be resolved such dispute shall be settled by binding arbitration. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof The arbitrator shall be a retired state or federal judge or an attorney who has practiced securities or business litigation for at least 10 years. If the parties cannot agree on an arbitrator within 20 days, any party may request that the chief judge of the District Court for Hennepin County, Minnesota select an arbitrator. Arbitration will be conducted pursuant to the provisions of this Agreement, and the Minnesota District Court Rules of Civil Procedure, except as limited by this Section, unless such rules are inconsistent with the provisions of this Agreement. Limited civil discovery shall be permitted for the production or documents and taking of depositions. Unresolved discovery disputes may be brought to the attention of the arbitrator who may dispose of stich dispute. The arbitrator shall have the authority to award any remedy or relief that a court of this slate could order or grant: provided. however, that punitive or exemplary damages shall not be awarded. The arbitrator may award to the prevailing party, if any, as determined by the arbitrator, all or its costs and fees, including attorneys' fees. Unless otherwise agreed by the parties, the place of any arbitration proceedings shall be Hennepin County, Minnesota.

Filing No. 13-1, § 22, CM/ECF p. 17.

The Purchase Agreement was later amended on December 31, 2010. Amendment Number One to Asset Purchase Agreement (the "Amendment") changed or replaced several sections of the Purchase Agreement including Sections 3(a), (b) & (c) and Section 8(c). Filing No. 13-1, CM/ECF p. 22. The Amendment provides as follows:

> The Original Agreement is hereby modified and supplemented. Whenever there exists a conflict between the Original Agreement and [the Amendment], the provisions of [the Amendment] shall control. . . . Except as amended and supplemented hereby, the Original Agreement is unamended and in full force and effect.

Filing No. 13-1, § 1, CM/ECF p. 21.

The Amendment was signed by the Chief Financial Officer of Security Products and by Aron Boumstein as president of Hamilton Safe and in his individual capacity. The amendment was not signed by Plaintiff Robert Boumstein.

The Note.

The Purchase Agreement contained several exhibits. Filing No. 13-2 to -9. One such exhibit is the Note at issue in this case. The Note was executed on December 31, 2010. The Note provides that Security Products agreed to pay Hamilton Safe the principal sum of Eighty-One Thousand Six Hundred Thirty-Nine and 68/100ths Dollars ($81,639.68). The Note also expressly contains the following provisions: "This Note is issued pursuant to and subject to the terms and conditions set forth in that Asset Purchase Agreement dated of even date herewith." Filing No. 13-3, CM/ECF p. 2.

The Assignment of the Note.

On December 31, 2010, the day the Amendment and the Note were signed, Aron Boumstein, in his capacity as president of Hamilton Safe, executed an assignment of the Note (the "Assignment") transferring all of Hamilton Safe's "right, title and interest in" the Note to Plaintiff Robert Boumstein.  Filing No. 7-2, CM/ECF p. 1.  The plaintiff does not claim the Assignment was invalid or did not transfer all of Hamilton's Safe's "right, title, and interest in, to and under [the] Note" to him.  Filing No. 7-2, CM/ECF p. 1.

Deferred Compensation Agreement.

The final document relevant to this dispute is the Nonqualified Deferred Compensation Agreement (the "Deferred Compensation Agreement") entered into between Robert Boumstein and Hamilton Safe on December 14, 2007 and amended on December 19, 2008.  Filing No. 7-3, CM/ECF pp. 1-10.  In his Amended Complaint, the plaintiff alleges Hamilton Safe "terminated [plaintiff's] employment as of the beginning of business on January 1, 2011."  Filing No. 7, ¶12, CM/ECF p. 4.  Because of this termination, the plaintiff asserts he is entitled to Termination Benefits as defined by the Deferred Compensation Agreement.  He alleges Hamilton Safe has failed to fulfill its obligation to pay Plaintiff at least two installments of the Termination Benefits. Filing No. 7, ¶12, CM/ECF p. 4.

Plaintiff alleges, as a result of the transfer of assets to Security Products, Hamilton Safe was left with insufficient assets to fulfill its obligations under the Deferred Compensation Agreement.  Plaintiff alleges Hamilton Safe transferred its assets to Security Products "with actual intent to hinder, delay and defraud [Plaintiff Robert Boumstein] in collecting the amount that would become due [to Robert Boumstein] under the [Amended Deferred Compensation Agreement]."  Filing No. 7, ¶18, CM/ECF p. 5.

5

As a result of the alleged fraudulent transfer, Plaintiff seeks the following remedies:

 (1) avoidance of the transfer of assets from Hamilton Safe to Security Products;

 (2) "an attachment or other provisional remedy" against the Hamilton Safe assets that were transferred to Security Products;

 (3) "subject to the principles of equity and in accordance with applicable rules of civil procedure:"

  (i) an injunction against the further disposition of the Hamilton Safe assets transferred to Security Products or of other property;

  (ii) appointment of a receiver to take charge of the transferred assets "and all other property of [Security Products] within the jurisdiction of the court.

Filing No. 7, ¶ 22, CM/ECF pp. 5-6.

Invoking the arbitration clause and choice of law provisions in the Purchase Agreement, Security Products seeks to have this case either stayed and ordered to arbitration or transferred to the United States District Court for the District of Minnesota upon a finding Nebraska is an improper venue in which to litigate this case. Plaintiff resists the motion to compel arbitration, arguing the arbitration clause in the Purchase Agreement is inapplicable to all of his claims.

## LEGAL ANALYSIS

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." AT & T Technologies v. Communications Workers of Am., 475 U.S. 643, 648 (1986); see also Churchill

Environmental and Indus. Equity Partners, L.P. v Ernst & Young, L.L.P., 643 N.W.2d 333, 336 (Minn. Ct. App. 2002)(citing AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA, 242 F.3d 780, 782 (8th Cir. 2001)). Unless the parties have agreed to submit the arbitrability question itself to arbitration the court must first decide whether a valid agreement to arbitrate exists. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). If so, the court must then determine if the parties' dispute falls within the scope of the arbitration agreement. AT & T Technologies, 475 U.S. at 649; Lipton-U.City, LLC v. Shurgard Storage Centers, Inc., 454 F.3d 934, 937 (8th Cir. 2006); Teamsters Local Union No. 688 v. Industrial Wire Products, Inc., 186 F.3d 878, 881 (8th Cir. 1999). "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes--but only those disputes--that the parties have agreed to submit to arbitration." First Options, 514 U.S. at 943 (1995).

Except to the extent state law treats arbitration agreements differently from other contracts, ordinary state-law principles govern the determination of whether an arbitration contract was formed. First Options, 514 U.S. at 944. However, once the court determines that an arbitration agreement exists, the Federal Arbitration Act, as a matter of federal law, requires that any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration. Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983); Teamsters Local Union No. 688, 186 F.3d at 881)("[A]rbitration is a matter of contract and may not be ordered unless the parties agreed to submit the dispute to arbitration. . . . [W]hen an arbitration clause exists in a contract, there is a presumption of arbitrability unless it is clear that the arbitration clause is not susceptible of an interpretation that covers the dispute."). Specifically, the presumption of arbitrability applies to the scope of an arbitration agreement, but not to the existence of such an agreement.

> Unlike the general presumption that a particular issue is arbitrable when the existence of an arbitration agreement is not in dispute, see Moses H. Cone

> Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), when the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

Riley Mfg. Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir. 1998).

    1.    <u>Terms of the Contract.</u>

The court must first address whether, under the law of Minnesota, an enforceable arbitration agreement exits.[2] Churchill Environmental and Indus. Equity Partners, L.P, 643 N.W.2d at 337. Under Minnesota law, a contract must be construed as a whole and "[a] contract and several writings relating to the same transaction must be construed with reference to each other." Knut. Co. v. Knutson Const. Co., 433 N.W.2d 149 (Minn. Ct. App. 1988) (internal citations omitted).

In Farrell v. Johnson, 442 N.W.2d 805, 806-7 (Minn. Ct. App. 1989), a Minnesota court held that "instruments executed at the same time, by the same parties, relating to the same transaction will be considered and construed together, since they are, in the eyes of the law, one contract or instrument." In Farrell, the court applied this principle of Minnesota contract law in holding a sales agreement and a subsequently executed closing agreement were integrated and represented a single contract for the determination of the parties' obligations under the contract. Id.

Minnesota courts have also applied this fundamental rule of contract interpretation in the context of integrating an arbitration agreement. In Knut. Co., a Minnesota court

---

[2] The parties agree that Minnesota law applies under the choice of law provisions in the Purchase Agreement and the Note.

8

held that a guaranty and promissory note were subject to the arbitration provision contained in an underlying asset purchase agreement. The note in Knut. Co. was an exhibit to the purchase agreement, and even though the note did not specifically state that it was subject to the terms of the purchase agreement, the court found it was governed by the arbitration clause found in the purchase agreement.

> The Agreement's recitation of consideration specifically mentions the Note, and explicitly states that the Note is subject to the Agreement's terms and conditions. Three other paragraphs in the Agreement provide for the Note's principal to be adjusted in specific circumstances. . . . Finally, the Agreement contains a merger clause, stating that the parties' entire bargain is contained in the Agreement and its exhibits.

Knut. Co., 433 N.W.2d at 151. The court also found the broad arbitration clause in the purchase agreement which stated, "any controversy or claim arising out of, or relating to, [the purchase agreement], or the making, performance or interpretation thereof shall be settled by arbitration . . . ." supported the integration of the documents. Id.

In this case, despite Plaintiff's arguments to the contrary, there is little question the Note is subject to the terms of the Purchase Agreement and, along with the other exhibits to the Purchase Agreement, should be treated as a single contract controlled by the terms of the Purchase Agreement. The Note is specifically referenced numerous times throughout the Purchase Agreement. See Filing No. 13-1, §§ 2(b), 3(b), 8(c), and 11(c)(iii), CM/ECF pp. 3, 4, 7, and 10. Moreover, the Purchase Agreement also contains a merger clause which specifically provides:

> This Agreement, including any Schedules and Exhibits attached hereto, constitutes the entire and final agreement of the parties with respect to the subject matter described in the Agreement and supersedes all previous negotiations, commitments, understandings or writings with respect to any such subject matter.

Filing No. 13-1, § 20, CM/ECF p. 17.

Section 20 of the Purchase Agreement clearly incorporates all its exhibits, including Exhibit "C" which contains the Note that was later executed by the parties. Moreover, the Note expressly states that it was issued pursuant to the Purchase Agreement and is "subject to" the terms of the Purchase Agreement. Accordingly, the parties to the Purchase Agreement clearly intended for the Note to be incorporated as a part of the Purchase Agreement, representing the final contract between the parties.[3] See Farrell, 442 N.W.2d at 807. Thus, the original parties to the Purchase Agreement and the Note – Aron Boumstein, Hamilton Safe, and Security Products – agreed to resolve any disputes "arising out of or relating to" the Purchase Agreement – which includes the Note – through the process of binding arbitration.

The Plaintiff argues that inconsistences in the terms of the Note and the Purchase Agreement are evidence that the parties did not intend to integrate the Note into the Purchase Agreement. But inconsistences and some repetitive provisions between two separate documents do not warrant a finding that the documents were not intended to be integrated. Rather, if a dispute arises as to what the allegedly inconsistent or ambiguous provisions mean, the contract will have to be interpreted. See generally Apple Valley Red-E-Mix, Inc. v. Mills-Winfield Engineering Sales, Inc., 436 N.W.2d 121, 123 (Minn. Ct. App. 1989)(parole evidence may be introduced to interpret ambiguous contract terms). Here, the plaintiff does not identify any provision in the Note that is inconsistent

---

[3] Plaintiff states that he "ignore[s]" the provisions of the Amendment because it is not referenced in the Note. Filing No. 10, CM/ECF p. 3. Accordingly, he asserts that the Amendment is not relevant. This argument is meritless. The Amendment is just that – an amendment to the original Purchase Agreement. It expressly states that it modifies and supplements the Purchase Agreement and otherwise leaves the Purchase Agreement in "full force and effect." Filing No. 13-1, CM/ECF p. 21. Thus, the Amendment is incorporated into the Purchase Agreement. As explained above, the Note and the other exhibits to the Purchase Agreement join together to form the entire contract through incorporation. The Amendment is included in writings that make up the entire contract and it is relevant.

with the arbitration clause in the Purchase Agreement. Accordingly, his argument against a full integration of the documents, including the arbitration clause, carries little weight.

2.   <u>Assignment</u>.

The plaintiff argues that even if the original parties to the Purchase Agreement were bound by the arbitration provision, he is not obligated to arbitrate. He asserts disputes arising under the Note are not subject to arbitration, and further argues that although he signed the original Purchase Agreement, he specifically agreed to be bound by only sections 3, 7, 8 and 9.

The Note is incorporated into the Purchase Agreement, and plaintiff's complaint alleges a dispute arising from or relating to the Note. The issues pertaining to missed payments under the Note are therefore subject to the arbitration provision. Plaintiff's argument to the contrary is without merit.

Plaintiff further argues he is a signator for only certain sections of the original Purchase Agreement, and since the arbitration clause is not within those sections, he is not bound by it. This argument also fails. Hamilton Safe assigned the Note to the plaintiff. Plaintiff accepted the assignment, without any exceptions or reservations, and he does not contest the validity of the Assignment. Plaintiff admits he is the current holder of the Note. Filing No. 7, ¶7, CM/ECF p. 2. Under Minnesota law the assignee steps into the shoes of the assignor "and provides the assignee with the same legal rights as the assignor had before the assignment." Cascades Development of Minn., LLC. v. Nat'l Speciality Ins., 675 F.3d 1095, 1099 (8th Cir. 2012); <u>see also</u> Day v. Case Credit Corp., 427 F.3d 1148, 1153 (8th Cir. 2005)(assignee subject to defenses that could have been raised against assignor); Ned Chartering & Trading, Inc. v. Republic of Pakistan,

294 F.3d 148, 153 (D.D.C. 2002) (assignee is subject to defenses the obligor could have raised against the assignor); Restatement (Second) of Contracts § 336(2) (1986).

Likewise, defenses that a contracting party could assert against the assignee, including the right to compel arbitration, remain available against the assignor. See Illinois Farmers Ins. Co. v. Glass Service Co., 683 N.W.2d 792, 803-04 (Minn. 2004); see also Restoration Preservation Masonry, Inc. v. Grove Europe, Ltd., 325 F.3d 54, 62 n.2 (1st Cir. 2003)(assignee may be "bound by or acquire rights under an arbitration agreement . . . ."); Olsen v. United States, 665 F. Supp. 2d 1225, 1231-2 (E.D. Wash. 2009)(assignee could only pursue claims against the plaintiff "in a manner prescribed in the contract" between the plaintiff and the assignor); E-Time System, Inc. v. Voicestream Wireless Corp., no. CIV.A. 01-5754, 2002 WL 1917697 at *9 (E.D. Penn. Aug. 19, 2002)(assignee subject to defenses that could have been validly raised against assignor including a mandatory arbitration provision).

By accepting the assignment of the Note from Hamilton Safe, the plaintiff stepped into the shoes of Hamilton Safe. All claims and defenses Hamilton Safe could assert on the Note are now held by the plaintiff. All claims and defenses Security Products could assert against Hamilton Safe could now be asserted against the plaintiff, (see Illinois Farmers Ins. Co., 683 N.W.2d at 803-04), including enforcing the arbitration provision to which Hamilton Safe agreed.

It is apparent that the plaintiff was involved in this transaction from the beginning. Had he wanted to limit his exposure to arbitration under the Note, he could have contracted with Hamilton Safe to expressly prevent it from entering into any agreement that contained an arbitration provision applying to the Note. See Delacy Investments, Inc. v. Thurman, 693 N.W.2d 479, 486-87 (Minn. Ct. App. 2005). Because there are no such limitations regarding Security Products' ability to compel arbitration against

Hamilton Safe (and therefore against Robert Boumstein as its assignee), the dispute over the Note payments is subject to arbitration.

### 3. Fraudulent Conveyance.

The plaintiff argues his fraudulent conveyance theory of recovery is not subject to arbitration. Whether a cause of action is subject to an enforceable arbitration provision is a matter for the court to decide. Churchill Environmental and Indus. Equity Partners, 643 N.W.2d at 337 (citations omitted). In determining the scope of an agreement to arbitrate the court "must 'give effect to the contractual rights and expectations of the parties.' " Mork v. Loram Maintenance of Way, Inc., 844 F. Supp. 2d 950, 953 (D. Minn. 2012)(quoting Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., -- U.S. --, 130 S.Ct. 1758, 1744 (2010)). The party opposing arbitration has the burden of proving that the dispute is not within the scope of the arbitration agreement. Kilcher v. Dale, 784 N.W.2d 866, 870 (Minn Ct. App. 2010)(citing Onvoy, Inc. v. SHAL, L.L.C., 669 N.W.2d 790, 795 (Minn. 1995). Any doubts about arbitrability should be resolved in favor of arbitration. Johnson v. Piper Jaffray, Inc., 530 N.W.2d 790, 795 (Minn.1995).

The plaintiff essentially seeks to unwind the transfer of Hamilton Security assets to Security Products because "[t]he consideration that [Security Products] transferred to [Hamilton Safe] . . . was grossly inadequate." Robert Boumstein argues that he is a creditor of Hamilton Safe pursuant to the Nebraska Fraudulent Conveyance Act (the "Act") and, as such, is entitled to relief under the Act. Filing No. 7, ¶ 17, CM/ECF p. 4.

The legal questions created by this position are numerous,[4] but the issue currently before this court is whether the plaintiff's fraudulent conveyance claim is subject to

---

[4] The plaintiff asserts a claim to recover amounts owed under the Deferred Compensation Agreement yet fails to name Hamilton Safe – the other party to the Deferred

arbitration. Plaintiff argues that his claim arises out of the Deferred Compensation Agreement and is not subject to the arbitration provision in the Purchase Agreement (and through incorporation, the Note). Defendant argues that the plaintiff is trying to unwind the transaction between Hamilton Safe and Security Products, and therefore Plaintiff's fraudulent conveyance claim arises directly from, and relates to, the Note. Defendant argues that because the plaintiff accepted assignment of the Note, the plaintiff has agreed to arbitrate such claims.

By accepting the assignment, the plaintiff agreed to arbitrate "[a]ny dispute arising out of or relating to [the Purchase Agreement] . . . or the making of this [Purchase Agreement]." The assignment was not restricted in any fashion, thus any claim Plaintiff might raise against Defendant relating to the formation of the Note or the Purchase Agreement is encompassed by the arbitration provision.

The plaintiff's fraudulent conveyance claim alleges Security Products and Hamilton Safe conspired to sell the Hamilton Safe assets for an inadequate price, leaving Hamilton Safe unable to pay the plaintiff for amounts owed under the Deferred Compensation Agreement. Thus, at the heart of the fraudulent conveyance claim is a dispute between Plaintiff Robert Boumstein and Security Products regarding the legitimacy of the sale of assets between Hamilton Safe and Security Products. Though he seeks amounts owed under the Deferred Compensation Agreement, the fraudulent conveyance claim is, in substance, challenging the formation of the Purchase Agreement and the terms of the Note. Disputes over the formation of the Purchase Agreement are clearly covered by the arbitration provision entered into between Security Products and

---

Compensation Agreement – as a party to this action. Moreover, he argues Security Products aided and abetted Hamilton Safe in committing the fraudulent transfer of assets to Security Products, but he does not name the party it allegedly aided and abetted – Hamilton Safe. Finally, the plaintiff was apparently aware of the purchase price, the terms of the Purchase Agreement, and the terms of the Note when he took assignment of the Note, which would seem to undercut his claims of fraud. In any event, the court need not address these questions to determine whether the fraudulent conveyance claim is subject to arbitration.

14

Hamilton Safe. As Hamilton Safe's assignee, the plaintiff likewise is subject to the mandatory arbitration provision and all disputes "arising out of . . . the making" of the Agreement.

    4.    <u>Right to Jury Trial</u>.

The plaintiff argues that he is entitled to a jury trial on his claims because he has not expressly waived his right to a jury trial as required by Minnesota law. However, by accepting the assignment of the Note, the plaintiff agreed to do just that – arbitrate his claims rather than litigate in front of a jury. The " 'loss of the right to jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate.' " Aufderhar v. Data Dispatch, Inc., 452 N.W.2d 648, 653 (Minn. 1990)(quoting Pierson v. Dean, Witter, Reynolds, Inc., 742 F.2d 334, 339 (7th Cir. 1984)); see also Burlington Northern R. Co. v. Soo Line R. Co., 162 B.R. 207, 214 (D. Minn. 1993) (finding Burlington Northern was bound by an arbitration provision even though it never expressly consented to the assignment of that specific provision in an agreement with the opposing party). The plaintiff knowingly and voluntarily executed the Assignment of the Note which, in turn, bound the plaintiff to the arbitration provision within the Purchase Agreement. Accordingly, the plaintiff waived of his right to a jury trial.

Accordingly,

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that

1)    Defendant's Motion to Compel Arbitration and Stay Action or, in the Alternative, to Transfer to The United States District Court for the District of Minnesota and/or Dismiss, (filing no. 11), should be granted in part and denied in part as follows:

      a.      The Defendant's Motion to Compel Arbitration should be granted, and this case should be stayed pending the parties' arbitration of this dispute under the terms of the Purchase Agreement; and

      b.      Defendant's Motion to Transfer to The United States District Court for the District of Minnesota and/or Dismiss should be denied.

2)      Defendant's previously filed Motion to Dismiss or, in the Alternative, to Stay Action, (filing no. 4), should be denied as moot.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that Defendant's Objection to Declaration, (filing no. 20), is denied. The undersigned considered all submitted evidence in making these Findings and Recommendations.

Dated this 24th day of October, 2012.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.